IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LAZAAR CHATTIN,  :
  :
        Petitioner,  :
  :
v.  :    Civ. Act. No. 13-1626-LPS
  :
DAVID PIERCE, Warden, and ATTORNEY  :
GENERAL OF THE STATE OF DELAWARE,  :
  :
        Respondents.  :

---

Lazaar Chattin. *Pro se* Petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

**MEMORANDUM OPINION**

September 25, 2017
Wilmington, Delaware

*signature*
**STARK, U.S. District Judge:**

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Lazaar Chattin ("Petitioner"). (D.I. 3) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. BACKGROUND

Petitioner was indicted on the following charges in December 2008: attempted first degree murder; three counts of possession of a firearm during the commission of a felony ("PFDCF"); reckless first degree endangering; two counts of possession of a firearm by a person prohibited ("PFBPP"); possession of ammunition by a person prohibited ("PABPP"); aggravated menacing; and theft of a firearm. (D.I. 18 at 3) The charges arose from two related incidents. (D.I. 18 at 1)

The first incident took place at Tyrell Wilson's home in Newark on October 24, 2008. Wilson and Shaun Holt, who were both acquaintances of Petitioner, were present in the house when Petitioner stopped by. After Petitioner left, Wilson noticed that his handgun, which he kept in his bedroom, was missing, and he suspected Petitioner of stealing it. Later that evening, Wilson confronted Petitioner about taking the gun. Petitioner denied it, but when Wilson threatened to pat him down, Petitioner drew the gun, pointed it at Wilson, and threatened to kill him if he did not leave. As he left, Wilson heard a single gunshot. (D.I. 18 at 1-2)

Wilson reported the gun as stolen to the police. (D.I. 18 at 2) A few days later, Wilson identified Petitioner as the suspect from a six photograph photo lineup, and a warrant was issued for Petitioner's arrest. *Id.*

The second incident occurred on November 8, 2008, while Wilson and Holt were in Holt's house. (D.I. 18 at 2) Shortly before 2 a.m., they saw Petitioner and several other men hanging around Wilson's car, which was parked in front of the house. Holt went outside to smoke a cigarette. Petitioner asked Holt where Wilson was, and became irritated at Holt when he would not

answer. As he turned to leave, Holt heard a gun firing, looked back, and saw Petitioner shooting at him. Holt was struck once in the leg as he fled up the steps and into the front door of his house. The police were called, and they found Holt in his bedroom with a gunshot wound to his right leg. Holt told the police that Petitioner had shot him. At the hospital, police showed Holt a single photograph of Petitioner, and Holt identified Petitioner as the shooter. *Id.*

While investigating the shooting, the police found six bullet holes in the front door of Holt's house and a box of ammunition approximately 50 yards away. (D.I. 18 at 2) A latent fingerprint was recovered from the ammunition box, which was matched to Petitioner. *Id.* The handgun was never recovered. (D.I. 20, Affidavit of Dade Werb, Esq.)

In July 2009, Petitioner's first jury trial ended in a mistrial during jury deliberations. (D.I. 18 at 3) His second jury trial occurred in April 2010, and Petitioner was convicted of attempted murder, reckless endangering, PFDCF, PABPP, theft of a firearm, and PFBPP, and acquitted of aggravated menacing and an associated PFDCF charge. *Id.* He was sentenced to a total of forty-four years of imprisonment, suspended after serving twenty-five years mandatory for eight years at Level IV, suspended after one year for probation. *See Chattin v. State*, 16 A.3d 937 (Table), 2011 WL 987752, at *1 (Del. Mar. 21, 2011). The Delaware Supreme Court affirmed Petitioner's convictions and sentence on direct appeal. *Id.* at *3.

In June 2011, Petitioner filed his first motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion). (D.I. 18 at 4) A Superior Court Commissioner issued a Report and Recommendation that the Rule 61 motion be denied. *See State v. Chattin*, 2012 WL 1413452, at *8 (Del. Super. Ct. Jan. 6, 2012). The Superior Court adopted the recommendation and issued an order denying the Rule 61 motion; the Delaware Supreme Court affirmed that decision. *See Chattin v. State*, 58 A.3d 982 (Table), 2012 WL 5844886 at *1 (Del. Nov. 16, 2012).

2

Petitioner filed his second Rule 61 motion in October, 2013. (D.I. 20, Del. Super. Ct. Crim. Dkt. Entry No. 106) The Superior Court denied that motion, and Petitioner did not appeal that decision. (D.I. 20, Del. Super. Ct. Crim. Dkt. Entry No. 113)

## II. GOVERNING LEGAL PRINCIPLES

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford*, 538 U.S. at 206.

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

3

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *see also Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of a claim means that the petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see also Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *see also Harris v. Reed*, 489 U.S. 255, 260-64 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

4

claims. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *see also McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494. Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002). A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### B. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a

5

procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. *See* 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

Finally, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *see also Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Petitioner asserts the following seven ineffective assistance of counsel claims:[1] (1) defense counsel failed to present evidence that the victims planted evidence, that the State failed to identify

---

[1] The Petition actually asserts four "formal" grounds for relief, with some of those grounds containing sub-claims. For ease of analysis, the Court has re-numbered the claims without altering the substance of the arguments contained therein.

6

the two spent projectiles recovered inside the residence as matching the six spent shell casings police located outside, and that Wilson and Holt planted the box of ammunition the police found outside of the crime scene; (2) defense counsel failed to obtain DNA testing on a knit cap and sunglasses that police found at the crime scene, and also failed to call as witnesses two women who were with Wilson at the time of Holt's shooting; (3) defense counsel should have objected to the trial judge's decision to declare a mistrial in his first trial and his re-trial should have been barred by double jeopardy; (4) defense counsel failed to object to the testimony of several prosecution witnesses who testified that other people were inside the residence at the time of the shooting and called 911 to report it; (5) defense counsel failed to move to suppress witnesses' out-of-court statements; (6) defense counsel failed to hire an expert to test his clothing for gunshot residue; and (7) defense counsel failed to move to sever the charges against Petitioner. The State contends that Claims One, Two, Three, Four and Five should be denied as procedurally barred, and that Claims Six and Seven should be denied for failing to satisfy § 2254(d).

### A. Claims One Through Five: Procedurally Barred

Petitioner did not exhaust state remedies for Claims One, Two, Three, Four, and Five, because he did not present them to the Delaware Supreme Court in his post-conviction appeal. Since any attempt to obtain further state court review of Claims One through Five via a new Rule 61 motion would be time-barred under Delaware Superior Court Criminal Rule 61(i)(1),[2] these five Claims are procedurally defaulted. Consequently, the Court cannot review the merits of these Claims absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

---

[2] *See* Del. Super. Ct. Crim. R. 61(i)(1) (imposing one-year filing deadline for Rule 61 motions).

Petitioner attempts to establish cause for his procedural default by asserting that he was unconstitutionally denied representation by counsel during his Rule 61 proceeding under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). (D.I. 19 at 1-2) In *Martinez*, the Supreme Court held for the first time that the absence of counsel or the inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id.* at 1320 (emphasis added). However, *Martinez* is inapplicable to, and does not provide cause for the default of, Claims One, Two, and Five, because those Claims were presented in Petitioner's initial collateral review proceeding; they were only waived on collateral appeal due to his failure to raise them in that appeal. *See Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) ("*Martinez* made very clear that its exception to the general rule of *Coleman* applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals."). Petitioner does not present an additional reason for his failure to include these three claims on post-conviction appeal. Therefore, the Court concludes that he has failed to demonstrate cause.

Given Petitioner's failure to establish cause, the Court will not address the issue of prejudice for Claims One, Two, and Five. Petitioner has not provided new reliable evidence of his actual innocence warranting the application of the miscarriage of justice exception to the procedural default doctrine. Thus, the Court will deny Claims One, Two, and Five as procedurally barred from Federal habeas review.

However, since Petitioner did not present Claims Three and Four to the Superior Court in his initial collateral proceeding, the Court will assume, without deciding, that the absence of post-conviction counsel provides cause for his default under *Martinez*. The Court, therefore, will determine if any prejudice will result by not reviewing the merits of these two claims.

8

1. **Claim Three**

During jury deliberations in Petitioner's first trial, the "jury sent a 'Note' to the trial judge stat[ing] that one of the jurors could not speak English and was unable to deliberate with the rest of the jury." (D.I. 3 at 28-29) The trial judge gave Petitioner the option of proceeding with eleven jurors or declaring a mistrial. (*Id.* at 29) Now, in Claim Three, Petitioner asserts that he personally demanded a jury of twelve (D.I. 3 at 29), and suggests that the trial court could have replaced the disqualified juror with an alternate instead of declaring a mistrial. He also contends that defense counsel provided ineffective assistance by not opposing the trial court's declaration of a mistrial, and that his retrial should have been barred by double jeopardy.

These arguments fail to establish the requisite prejudice. To begin, pursuant to Delaware statutory law, individuals who are "unable to read, speak and understand the English language" are disqualified from jury service,[3] and the United States Supreme Court has recognized the constitutionality of such a requirement. *See Carter v. Jury Comm'n of Green Cnty.*, 396 U.S. 320, 333 (1970) ("Nearly every State requires that its jurors be . . . able to understand English."). Therefore, defense counsel had no basis to object to the removal of a juror who was unable to speak English.

In turn, Delaware Superior Court Criminal Rule 24(c) does not permit the juror replacement strategy Petitioner suggested once jury deliberations have begun.[4] Since the United States Supreme Court also "has not specifically ruled on the constitutionality of substituting an alternate juror after jury deliberations have begun,"[5] Petitioner cannot show that the failure to request to substitute an alternate juror infected his entire trial with error of constitutional dimensions. Therefore, the Court

---

[3]10 Del. Code Ann. § 4509(b)(4).
[4]*See* Del. Super. Ct. Crim. R. 24(c) ("An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict.").
[5]*Claudio v. Snyder*, 68 F.3d 1573, 1575 (3d Cir. 1995).

9

concludes that Petitioner will not be prejudiced by the Court's refusal to excuse his default of Claim Three.

### 2. Claim Four

In Claim Four, Petitioner contends that defense counsel failed to object to the testimony of several prosecution witnesses who testified that other people were inside the residence at the time of the shooting and that those people called 911 to report it. The Confrontation Clause of the Sixth Amendment provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the ... right to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial," unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 US. 36, 59 (2004). However, this prohibition "applies only to testimonial hearsay" that is admitted to establish the truth of the matter asserted in the statement. *See Davis v. Washington*, 547 U.S. 813, 823-4 (2006); *see also Crawford*, 541 U.S. at 60 n.9. A testimonial statement is a statement that a reasonable person in the position of the declarant would objectively foresee might be used in the investigation or prosecution of a crime. *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005). Thus, the threshold question is whether the challenged statement is testimonial and, if so, whether it was introduced to establish the truth of the matter asserted. *See Hinton*, 423 F.3d at 357 (3d Cir. 2005). If not, the Confrontation Clause has no application.

Here, Petitioner complains that the State's witnesses testified to "the existence of these witnesses and victims inside the residence." (D.I. 3 at 32) Importantly, however, he does not assert, and the record does not reflect, that any witness testified to statements made by the non-testifying people in the residence at the time of the shooting. As such, there was no Confrontation Clause

10

violation. Since defense counsel had no reason to object to a non-existent Confrontation Clause violation, Petitioner cannot demonstrate prejudice to excuse his default of Claim Four.

Finally, Petitioner has not provided new reliable evidence of his actual innocence warranting the application of the miscarriage of justice exception to the procedural default doctrine. Accordingly, the Court will deny Claims Three and Four as procedurally barred from Federal habeas review.

### B. Claims Six and Seven: Meritless

The Delaware Supreme Court denied Claims Six and Seven as meritless on post-conviction appeal. As a result, Petitioner will only be entitled to habeas relief for these claims if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991). Although not insurmountable, the *Strickland* standard

11

is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." 466 U.S. at 689.

Notably, a state court's decision regarding an ineffective assistance of counsel claim is owed "double deference" when reviewed under § 2254(d)(1), because

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). ***When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.***

*Richter*, 562 U.S. at 104-05 (emphasis added). When assessing the reasonableness of counsel's performance under *Strickland*, there "is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect," and "*Strickland* [] calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Richter*, 562 U.S. at 109-10. In turn, "[w]hen assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* at 111-12. Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101. In other words,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 103.

12

Turning to the § 2254(d) inquiry in this case, the Court notes that the Delaware Supreme Court analyzed Petitioner's ineffectiveness assistance of counsel claims pursuant to the *Strickland* standard. Therefore, the Delaware Supreme Court's decision is not likely to have been contrary to clearly established law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Below the Court more particularly assesses whether the Delaware Supreme Court reasonably applied *Strickland* in connection with Petitioner's remaining two ineffective assistance of counsel claims.

### 1. Claim Six: Gunshot Residue Expert

In Claim Six, Petitioner contends that defense counsel provided ineffective assistance by failing to hire an expert to test his clothing for gunpowder residue. When affirming the Superior Court's denial of this argument, the Delaware Supreme Court explained:

> The evidence presented at trial was that the police did not test [Petitioner's] clothing for gunpowder residue because those tests tended to yield unreliable results. Assuming that [Petitioner's] counsel could have located an expert willing to testify to the accuracy of such testing, and assuming that there was no actual gunpowder residue on [Petitioner's] clothing, [Petitioner] has failed to demonstrate that that would have been sufficient to alter the outcome of his trial, given the overwhelming other evidence supporting the jury's guilty verdict. Because [Petitioner's instant] claim fails *Strickland*'s prejudice prong, we conclude that his [instant] claim is also without merit.

*Chattin*, 2012 WL 5844886, at *2.

The Delaware Supreme Court's decision did not involve an unreasonable application of *Strickland*. Petitioner has not provided clear and convincing evidence to rebut the Delaware Supreme Court's factual determination that gunpowder residue testing does not always yield reliable results. Moreover, even assuming that defense counsel could have found an expert who was willing

13

to testify that gunpowder residue testing gave accurate results, Petitioner has failed to demonstrate a reasonable probability that the test results would have altered the outcome of his proceeding, especially when viewed in conjunction with the following overwhelming evidence: (1) Petitioner pointed the gun at Holt; (2) Holt was shot in the knee; (3) Holt identified Petitioner as the shooter; (4) six other bullets from the gun were found in the front door Holt's residence; and (5) a latent fingerprint taken from a box of ammunition found 50 yards from the front of Holt's residence matched Petitioner. (D.I. 20, *Chattin v. State*, No. 497, 2010, State's Response to Appellant's Rule 26(c) Brief, at ¶ 7, ¶ 9) Therefore, Claim Six does not warrant relief under § 2254(d).

### 2. Claim Seven: Severance

In his final Claim, Petitioner asserts that defense counsel should have moved to sever the handgun charge from the attempted murder and related charges. The Delaware Supreme Court denied this argument, explaining that

> [t]he two incidents that led to the charges against [Petitioner] were "of the same or similar character" and represented "two or more acts or transactions connected together or constituting parts of a common scheme or plan." *See* Super. Ct. Crim. R. 8(a). Specifically, the evidence presented at trial reflected that the theft provided the motive for the shooting. Therefore, the charges against [Petitioner] were properly joined in the same Superior Court proceeding, and [Petitioner's instant] claim is without merit.

*Chattin*, 2012 WL 5844886, at *2.

The Court concludes that the Delaware Supreme Court reasonably applied *Strickland* when denying Claim Seven. Delaware Superior Court Criminal Rule 8(a) provides that "two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Del. Super. Ct. Crim. R. 8(a). Delaware Superior Court Criminal Rule 14

14

provides that a "court may order an election of separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires," if "it appears that a defendant or the state is prejudiced by a joinder of offenses." Del. Super. Ct. Crim. R. 14. Notably, "where evidence concerning one crime would be admissible in the trial of another crime [], there is no prejudicial effect in having a joint trial." *Bates v. State*, 386 A.2d 1139, 1142 (Del. 1978).

In this case, the two incidents leading to the charges were close in time, occurring about a week apart, and involved the same parties. Wilson's decision to report Petitioner's theft of his firearm to the police in the first incident provided the catalyst for Petitioner's shooting of Holt in the second incident. Finally, evidence of the theft of the handgun would have been admissible during the trial regarding the Holt shooting. Given all of these circumstances, Petitioner cannot demonstrate a reasonable probability that a severance motion would have been granted if defense counsel had filed one. Therefore, Claim Seven fails to satisfy § 2254(d).

## IV. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED** without an evidentiary hearing. An appropriate Order will be entered.